IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

VINCENT WHIPP and )
ANGELA GLENN, )
 )
    Plaintiffs, )
 )
 )
 ) NO. 2:03-0112
 ) JUDGE HAYNES
WAYNE GLENN, WILLIAM GLENN, )
and JOSHUA GLENN, )
 )
    Defendants. )

**MEMORANDUM**

    Plaintiffs, Vincent Whipp and Angela Whipp, formerly Angela Glenn, filed this action under 18 U.S.C.§§ 2510 et seq. against the Defendants Wayne Glenn, William Glenn and Joshua Glenn. Plaintiff's claim arises out of a domestic dispute and the subsequent divorce of Plaintiff, Angela Glenn Whipp and Wayne Glenn. Plaintiffs' specific claims are for the Defendants' alleged use of electronic devices to intercept their communications. Plaintiff also assert a companion claim based upon comparable state law. Tenn. Code Ann. §§ 39-13-601 and 603 and Tenn. Code Ann. § 40-6-301.

    Before the Court is the Plaintiffs' motion for partial summary judgment (Docket Entry No. 60) for violations of the cited federal and state statutes on interception of their conversations and e-mails. Plaintiffs rely upon the Defendants' admissions in their testimony in the state divorce proceeding. The Defendants respond that they were relying upon advice of counsel and in the interests of Wayne Glenn's minor children. Defendants also argue that any messages were stored, not intercepted , but insist that any information obtained was lawful.

## A. Findings of Fact[1]

On December 2, 2002, Wayne Glenn filed for divorce against Angela Glenn in the Chancery Court of Putnam County, Tennessee. Prior to that filing, on October 15, 2002, the Defendants installed video recording equipment with microphones in the Glenns' residence. Joshua Glenn and Wayne Glenn actually installed spyware software on Angela Glenn's employer's computer' in late October, 2002. (Docket Entry No. 5, pp. 35-36, Wayne Glenn, Docket Entry No 5, p. 35-36). Wayne Glenn installed the VCRs as surveillance to intercept oral communications. (Docket Entry No. 63, Attachment No. 1, Wayne Glenn Deposition at pp. 72, 75-76).

Wayne Glenn also installed equipment to record any communications of Angela Glenn on the telephone. (Docket Entry No. 5, Wayne Glenn Deposition, Attachment thereto at pp. 36-37, and Docket Entry No. 63, Attachment thereto, Wayne Glenn Deposition at pp. 75-76).

In his deposition during the divorce proceedings, defendant Wayne Glenn testified

> Q. . . . So they weren't video cameras they were just microphones?
>
> A Yes,
>
> Q.. You were using a video recorder as a tape recorder?

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court concludes that there are not any material factual disputes. This section does not constitute a finding of facts under Fed.R.Civ.P. 56(d).

2

Case 2:03-cv-00112  Document 68  Filed 10/24/05  Page 2 of 13 PageID #: 89

> A We were using a VCR, three of them, to record audio in the house
>
> Q. Ok. And what sort of information were you able to obtain from those tapes?

(Docket Entry No. 5, Wayne Glenn Deposition at pp. 36-37).

Wayne Glenn admits taping conversations between Angela Glenn and her daughter, Angela Glenn and her' parents, Angela Glenn and Vincent Whipp, and anyone at their residence. (Chancery Court deposition of Wayne Glenn, Docket Entry No. 5, p 36-37). Wayne Glenn intercepted Angela Glenn's conversations for at least two months. Id. at p. 32.

Angela Whipp's and Vincent Whipp's e-mail communications were also intercepted and then transmitted to Georgia where Wayne Glenn read the private communications. These e-mails were printed and bound. Id. at p. 39. Wayne Glenn read Angela Glenn's e-mails for a period exceeding five months. Id. at pp. 40-41. Wayne Glenn disclosed the e-mails' contents to his nephew, his father, his brother, his brother-in-law and others. Id. at pp. 42-43. Wayne Glenn sent Angela Glenn's e-mails to Joshua Glenn in Georgia. (Docket Entry No. 5, Wayne Glenn Deposition at pp. 39-40).

Wayne Glenn also installed a Global Positioning System (GPS) transmitter in Angela Glenn's vehicle after October 27, 2002 (Verified Complaint, ¶ 19). After a few months, Angela Glenn discovered the software on her computer and removed it, but Wayne Glenn reinstalled the GPS software.

Joshua Glenn assisted Wayne Glenn in the installation of the VCR surveillance system. (Docket Entry No. 63, William Joshua Glenn Deposition at p. 21). Joshua Glenn knew the VCR surveillance equipment would record "conversations" to which he was not be a party. Id. at p.

3

22. Joshua Glenn described the e-mail interception as follows:

> Q.   Are you aware that when Angela would send out an e-mail, she was able to go to her outgoing mailbox, e-mail mailbox, and she could tell that the e-mail was being sent simultaneously both to the person she designated as the recipient and to some other location?
>
> Q.   Were you aware of that?
>
> A    Yes, I'm aware of that.
>
> Q.   So how are you aware of that?
>
> A.   Because I'm the one who set up the Outlook Express message rule that allowed this to be possible.
>
> Q.   So who was the other recipient that the e-mail would have been sent to?
>
> A    It was a web mail account..
>
> Q.   What was the name of the web mail account?
>
> A.   ZebraOl789@yahoo.com

(Deposition excerpts of William Joshua Glenn, p. 30-31).

William Garner Glenn, Joshua Glenn's father, drilled holes to run the wire for the VCR recording system. (Docket Entry No. 63, William Glenn Deposition at pp. 48-50). Wayne Glenn verified that William Glenn and Joshua Glenn assisted him in installing the recording equipment

inside Glenn's residence. (Docket Entry No. 5, Wayne Glenn Deposition at pp. 32-33).

The Defendants submitted a response, but did not file any evidentiary materials. See Docket Entry No. 67. In affidavits filed earlier, the Defendants cited Angela Glenn's placement of a baby monitor in the Glenns' residence as a monitor to overhear Wayne Glenn's conversations. (Docket Entry Nos. 47 through 50). At the time, the Glenns had a two months old son. (Docket Entry No. 47, Joshua Glenn Affidavit at p. 1).

### B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

5

disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v.

Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.

\* \* \*

> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed</u>.'

<u>Liberty Lobby</u>, 477 U.S. at 248, 252, 106 S. Ct. 2505, 91 L.Ed.2d at 211-212, 214 (citation omitted and emphasis added).

It is likewise true that

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>, 791 F.2d. 43, 46 (6th Cir. 1986) <u>app.</u> 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

8

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the

9

party must prevail as a matter of law.'

6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The federal wiretapping statutes 18 U.S.C.. § 2510 et seq., prohibit the interception of electronic communications and the subsequent use and disclosure of intercepted

communications. The Tennessee legislature has adopted similar' legislation, i.e.. the Tennessee Wiretapping and Electronic Surveillance Act of 1994. Both state and federal law permit civil action for violations of these laws. See 18 U.S.C. § 2520 and Tenn.. Code Ann § 3943-603 See also Fultz v. Gilliams, 942 F 2d 396, 399 (6th Cir. 1991).

Plaintiffs' first claim is that Defendants Wayne Glenn, William Glenn, and Joshua Glenn violated 18 U.S.C § 251 1(l)(a), that prohibits individuals from, inter alia, intentionally intercepting or endeavoring to intercept any wire, oral, or electronic communication. The Defendants' interception occurred with the VCR that recorded the private conversations of Angela Whipp and intercepted the oral communications of Angela Whipp and Vince Whipp.

Under the federal law, interception is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device,," 18 U.S.C. § 2510(4). 18 U.S.C § 251 1(1)(a) prohibits individuals from intentionally intercepting, endeavouring to intercept, or procuring any other person to intercept or endeavor to intercept, any wire, oral, or electronic communications. 18 U.S.C. § 2511(1)(c) and (d) prohibit individuals from intentionally disclosing or using, or endeavoring to disclose or use, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the illegal interception of a wire, oral, or electronic communication or by disclosing to others the intercepted incoming and outgoing e-mails of other persons.

In Fultz, the Sixth Circuit explained the rationale of 18 U. S. C.. § 2511 (1)(c) and (d) and as follows:

> Sections 2511(1)(c) and (d) plainly forbid all intentional disclosures and
> uses of' the contents of intercepted communications where the individual

> knows or should know that the source of the material is an unauthorized interception The language of these sections prohibiting even the endeavor to disclose or use the material serves to reinforce this conclusion. By prohibiting all intentional uses and disclosures of unauthorized interceptions by an individual with knowledge of the violation, subsections (1)(c) and (d) strengthen subsection (l)(a) by denying the wrongdoer the fruits of his conduct. They additionally insure Protection for the wiretap victim from third parties, unrelated to the wrongdoer, who, having access to the material and a reasonable basis to know its source, might desire to disclose the information for their own purposes.

942 F.2d at 401 (emphasis added).

Plaintiffs' state law claim is under Tenn. Code Ann § 39-13-601(a)(1)(A), that also prohibits individuals from intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.

By their admissions, Wayne and Joshua Glenn intercepted e-mail communications being sent out by Angela Glenn by installing software that duplicated and sent the e-mail message to Vince Whipp (and other's as well) to themselves via another e-mail account. William Glenn assisted them to intercept e-mails in violation of federal and state wiretapping laws. From the Court's research, neither advice of counsel nor acts in the interests of children is a defense to these laws.

18 U.S.C § 2520(c)(2) provides that in computing damages "the court may assess as damages whichever is the greater of (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $ 100 a day for each day of violation or $ 10,000. Additionally, Tenn.. Code Ann § 39-13-603 that authorizes damages, provides, inter alia:

> Any aggrieved person whose wire, oral or electronic communication is intentionally intercepted, disclosed, or used in violation of § 39-13-601

12

601 or title 40, chapter 6, part 3 may in a civil action recover from the person or entity which engaged in that violation the following relief:

(1) The greater of:

(A) The sum of the actual damages, including any damage to personal or business reputation or relationships, suffered by the plaintiff and any profits made by the violator as a result of the violation; or

(B) Statutory damages of one hundred dollars ($100) a day for each day of violation or ten thousand dollar's ($ 10,000), whichever is greater.

For the relevant time period, each Plaintiff seeks statutory damages of $10,000 against each Defendant. Plaintiffs seek an additional $10,000 each for the Defendants violation of the state wiretapping statute. Given that both statutes serve the identical interests, the Court declines to award duplicative damages. See Hickson Corp. v. Norfolk Southern Railway Co., 260 F.3d 559, 568 (6th Cir. 2001).

In sum, the Plaintiffs' motion for partial summary judgment should be granted and Plaintiffs are each awarded statutory damages of $10,000 from each of the Defendants, Wayne Glenn, Joshua Glenn and William Glenn.

An appropriate Order is filed herewith.

ENTERED this the 24th day of October, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge